The CHASE MANHATTAN BANK,
N. A., Plaintiff,

v.

CORPORACION HOTELERA de PUERTO RICO, INC., et al., Defendants.

Civ. No. 693–67.

United States District Court,
D. Puerto Rico.

March 8, 1978.

---

John M. García, Santurce, P. R., for plaintiff.

Edwin González Torres, Dept. of Justice, Old San Juan, P. R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

This cause came to be heard upon a verified petition requesting the payment of certain funds held in a special escrow account by Respondent Secretary of the Treasury of the Commonwealth of Puerto Rico (hereinafter referred to as the Secretary). In order to adequately dispose of the present matter, we will first summarize the relevant factual background.

On December 12, 1972, San Jerónimo Hotel Corporation, successful bidder at the judicial sale of the property involved in this foreclosure action [1] moved the Court for the creation of a special escrow fund to satisfy the Commonwealth's legal mortgage covering the property taxes due "for the years 1971–72, 1970–71, 1969–70 and 1968–69." According to said motion, the fund was to be created pending the final determination by the Governor of Puerto Rico of an application for tax exemption filed by Corpora-

1. The sale was held on October 26, 1972.

ción Hotelera de Puerto Rico (Corporación Hotelera), previous owner of the property.

The Court thereupon ordered the creation of an escrow fund "to cover payment of the Commonwealth of Puerto Rico's legal mortgage on the property." Pursuant thereto, a check in the amount of $831,438.61 from the proceeds of the public auction was issued to the Secretary.[2]

On June 11, 1973 the Governor of Puerto Rico granted the tax exemption requested by Corporación.[3] Thereafter the Secretary determined that the years 1969–70 and 1970–71 were covered by the decree of tax exemption but not so the years 1971–72 and 1972–73, and requested the release of funds in excess of $333,252.71, which it deemed to be the tax liability for the assertedly non-exempt years. The Court, on September 7, 1973 ordered the release of the funds in excess of the aforesaid amount and the balance of $499,621.80 was paid to Enrique Campos del Toro and Amron Credit Corporation, nominal owners of the remaining interest on the note secured by the second mortgage encumbering the foreclosed property.[4]

By virtue of Amron Credit Corporation and Chase Manhattan Bank's assignment of all their rights, title and interest in the second mortgage note, Mr. Campos del Toro became the nominal owner of a remainder of $1,000,000, plus interest, on the note secured by the second mortgage.[5] From that amount, he has collected a total of $765,836.04, which was $444,997.29 less than what he was entitled to collect according to his participation in the second mortgage note.

On November 28, 1977, Mr. Campos del Toro acknowledged, "for all legal purposes whatsoever", that he was only the nominal owner of the note to whose payment the funds in the special account are herein sought to be applied, and that the real party with interest over any funds still unpaid was René Aponte Caratini. By virtue of a contract dated February 10, 1977, embodied in a public deed of November 17, 1977, Mr. Aponte Caratini assigned all his rights, title and interest in the remaining funds to Petitioners herein.

The Secretary has concededly determined that the aforesaid Tax Exemption Decree was also applicable to real estate taxes on the foreclosed property for the years 1971–72 and 1972–73, for the payment of which he had retained the amount of $333,253.71. (See Petitioner's Exh. 1; also see: affidavit in support of Motion of October 13, 1977).[6] However, the Secretary objects to the distribution of the funds to Petitioners, claiming a tax indebtedness by Corporación Hotelera de Puerto Rico for the fiscal years 1964–65. (Petitioners' Exh. 3 a). This real property tax assessment was notified on January 28, 1977. (Respondent's Exh. E).

We are called upon to decide whether the Secretary is empowered to levy the property taxes due by Corporación Hotelera for the fiscal year 1964–65 from the funds in *custodia legis.*

Respondent basically argues that the Special Escrow Account was created for the

2. Upon the Secretary's Motion of January 29, 1973 the Court ordered that the additional sum of $1,436.90 be deposited in said escrow account.

3. The Decree of Tax Exemption specified the period of time covered by the grant, beginning with calendar year 1965 and running for a period of ten years therefrom.

4. Pursuant to the order of priorities established by the Court on April 25, 1973, it appears that the Chase Manhattan Bank and the Puerto Rico Industrial Development Company (PRIDCO) have already collected sufficient funds to cover their participation in the first and second mortgages, respectively.

5. These assignments are evinced by a Memorandum of Understanding of January 5, 1973 and a stipulation approved by the Court on July 9, 1973.

6. It appears that, pursuant to a previous settlement agreement with the Secretary, from the retained sum of $333,253.71, the amount of $132,563.11 had been utilized to settle a claim for taxes owed by various taxpayers upon a request by René Aponte Caratini (Respondent's Exh. 1). Hence, Petitioners herein are only claiming entitlement to the remaining balance of $200,690.60, plus interest.

payment of *all* property taxes on the foreclosed property; that a property tax liability assessment for the fiscal year 1964–65 was made prior to the bankruptcy proceedings and is not affected by such proceedings, and that the property tax liability ascertained and notified on January 28, 1977 is covered by a senior lien pursuant to the law of Puerto Rico, which exists independently of assessment since an assessment is merely one of the steps for the enforcement of a tax liability. Petitioners retort that the fund was created for a specific purpose which has been accomplished and which does not include the payment of the claim now made by the Secretary. It is Petitioners' contention that if the Commonwealth wishes to collect taxes for 1964–65, it must proceed against Corporación Hotelera since it holds no lien on the property involved herein.

At the time the judicial sale leading to the events summarized above was held, 13 L.P.R.A. 361 read as follows: [7]

"*With the exception of the taxes on the encumbered property for three years and for the current year*, mortgage credits and crop loans are hereby declared to be liens having preference over any other charge or lien for taxes or for any other cause." (Emphasis supplied).

In turn, 30 L.P.R.A. 292(5) provided:

"A statutory mortgage is established:

.    .    .    .    .

(5) In favor of the Commonwealth of Puerto Rico and the corresponding municipality of the property of the taxpayers for the amount of the taxes of the three annual assessments and the current unpaid annual assessment of the taxes which burden same."

The law of Puerto Rico thus establishes a preferred legal mortgage existing in favor of the Commonwealth. However, the plain language of the statute sets forth a floating time limit within which the preferred lien can be invoked, and there is nothing in this case suggesting that said statutory time limit can be obviated.

It is clear to us that when San Jerónimo Hotel Corporation purchased the property in 1972, it was only subject to the lien imposed by statute, to wit, to the current annual assessment at the time of the acquisition and to not more than the three annual assessments next preceding the same, provided said taxes had not been paid by Corporación Hotelera.[8] *Martínez v. Sancho*, 53 P.R.R. 527 (1938), appeal dismissed, 108 F.2d 960 (1st Cir., 1940); *Banco Popular v. Ramírez*, 57 P.R.R. 605 (1940). Thus, under the Laws of Puerto Rico any other taxes due by the former owner, such as the property taxes now attempted to be set-off from the escrow funds, were never assumed by the purchaser or by his assignees, insofar as they constitute a personal obligation of Corporación Hotelera, not secured by any lien. *Martínez v. Sancho*, supra.[9]

Respondent contends that Sections 303 and 315 of the Political Code, 13 L.P.R.A. 454, 464, empower the Secretary to notify and levy the property taxes for 1964–65. However, Respondents' reliance upon those provisions is misplaced. 13 L.P.R.A., 462 deals with the assessment of property for the current and three prior years and specifies that the tax so assessed shall constitute the first lien on the property. In turn, Section 454 of the same title autho-

7. Act No. 125 of July 23, 1974 augmented the three year term to five years. The amendment was also made extensive to 13 L.P.R.A. 462, 302 P.R.A. 292(5), 342, and 31 L.P.R.A. 5193(1), 5194(1). However, this amendment is not relevant to our present inquiry.

8. Notwithstanding Respondent's arduous argumentation, nothing has been brought to our attention indicating that the coverage of the statutory lien at a given time becomes fixed by the mere filing of a complaint.

9. The file in this case discloses that the escrow fund was not created to cover all the property taxes due by the former owner, but only those covered by the statutory lien. The Secretary itself has acknowledged that such was the purpose of the escrow account. See Par. 3 of San Jerónimo Hotel Corporation's Motion of December 12, 1972; Order of December 12, 1972; Secretary's Motion of January 29, 1973; Order of January 31, 1973; Secretary's Motion of August 1, 1973.

rizes the assessment of taxable real property which has been omitted from assessment for any fiscal year or years. That Section empowers the Secretary, upon assessment, to collect the unpaid taxes.

It is true that, under 13 L.P.R.A. 454 there is no limitation period restricting the Secretary's power to assess and levy property taxes. *Salom Pizá v. Secretary of the Treasury*, 92 P.R.R. 224 (1965). However, nowhere does it appear that said faculty implies an eternal lien on a given property, notwithstanding any alienation of the realty and regardless of the rights of third persons. The language of 13 L.P.R.A. 462 does not command that conclusion either. These provisions, referring to the power of the Secretary to assess and levy taxes in Puerto Rico, can in no way be invoked to alter the limited tax liability for which the fund in this case was established. *Martínez v. Sancho*, supra; also see, *Cerro v. Motta*, 70 P.R.R. 822 (1950); cf. *Riera v. Registrar*, 57 P.R.R. 659 (1940).

As we stated before one of Respondent's arguments is that since a valid tax lien on the property of Corporación Hotelera existed at the time of its adjudication in bankruptcy, said lien was undischargeable and can thus be legally enforced. We disagree. Under the language of Section 17(a)(1) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1), any tax liability for the year 1964–65 was released, insofar as it became due prior to the three years preceding the bankruptcy. Moreover, the Secretary has never challenged the discharge in B–89–77, which included the Treasury Department (Petitioner's Exh. 1).[10]

We must also reject Respondent's contention that the transfer of the claim against the Government to Petitioners herein is null and void for failing to comply with the formalities established in 3 L.P.R.A.

902. From the Public Deed of November 17, 1977 it transpires that Petitioners were assigned the right to collect the funds left in the escrow account created by Order of the Court. The monies deposited in said escrow account have always remained under our supervision, so that this is not to be considered a typical "claim" against the Commonwealth. Hence, the Secretary cannot successfully invoke 3 L.P.R.A. 902 to retain any funds to which he is not entitled under the law or under the terms of this Court's Orders.[11]

In view of the foregoing, and considering the representations made by counsel for Petitioners in his Motion of February 6, 1978, it is hereby ORDERED that *all* funds presently held in escrow by the Secretary of the Treasury of the Commonwealth of Puerto Rico be delivered to the Clerk of the Court for distribution in accordance with the Verified Petition of December 12, 1977.

IT IS SO ORDERED.

---

**10.** It is not clear to us, however, how the dischargeability *vel non* of said tax debt can be dispositive of the issues now before the Court, in view of the grounds discussed hereinbefore.

**11.** It must be pointed out that on previous occasions the Secretary has acceded to return funds in excess of his tax claims to other as-

signees. See Motion of August 30, 1973 and Memorandum Order of September 7, 1973. Under the peculiar circumstances of this case, Respondent should not be permitted to proceed against his own acts. *García Colón v. Secretary of the Treasury*, 99 P.R.R. 757, 763 (1971).